Houser, Respondent, vs. Wisconsin Chair Company, Appellant.

*May 22—June 17, 1914.*

*Master and servant: Injury to elevator operator: Contributory negligence: Unauthorized placing of another person in charge: Scope of employment: Disobedience of orders: Evidence: Safety of working place.*

1. Plaintiff, an elevator man in defendant's employ, while cleaning the pit of the elevator was struck and injured by the descending car which he, without authority, had placed in the temporary charge of another person.   Upon the evidence, findings by the jury to the effect that plaintiff supposed and had reason to suppose that he was authorized to place such other person in charge of the elevator, and that such person in operating it was within the scope of his employment, are *held* to be wholly unsupported.

2. It further appearing conclusively that plaintiff had been expressly instructed not to go into the pit without first tying the brake rope so that the car could not be moved and that he wilfully violated such instruction; a finding by the jury that he was free from contributory negligence was clearly contrary to the evidence.

3. Plaintiff's testimony that he did not know how to tie the rope and that "it wasn't up to me to ask," did not show a sufficient excuse for his violation of express orders, defendant's superintendent having the right, in view of plaintiff's experience and familiarity with elevators, to suppose that he understood his instructions or, if not, would at least make his ignorance known.

4. Plaintiff's working place and the appliances connected therewith, as he was ordered to use them, being safe, and he having wilfully and inexcusably violated his instructions without defendant's knowledge, the defendant is not liable for the consequent injuries.

APPEAL from a judgment of the circuit court for Ozaukee county: MARTIN L. LUECK, Circuit Judge. *Reversed.*

Action to recover for a personal injury.

Plaintiff while working for defendant in cleaning an elevator pit was struck by a descending car and injured.

The claim of the plaintiff was this: It was his duty to clean the pit. While he was so doing another servant, who was directed by him to operate the elevator in the meantime and not allow the car to go below the second floor, negligently failed to obey such direction, whereby the injury occurred. The claim of the defendant was that plaintiff was injured solely by his own carelessness.

There was evidence to this effect: Plaintiff was employed to run the elevator under a foreman named Boenning. He had been in defendant's employ at the factory for some years before the accident, though he had not been elevator man but a few weeks theretofore. At the bottom of the elevator shaft there was a pit about eighteen inches deep in which refuse was liable to accumulate so as to require it to be cleaned out twice a week. Prior to his time a boy ran the elevator and the pit was cleaned during noon hours or at other times when the appliance was out of service. When plaintiff was employed to take the boy's place he was directed to attend to cleaning the pit. He was instructed not to do it when the car was in service and not without tying the rope so the car could not be moved. His excuse for not obeying as to the rope was that he did not know how to tie it. There was a rope hanging in the shaft by which the elevator car was operated. When tied, so it could not be pulled to perform its purpose, the elevator was out of commission. Plaintiff did not ask his foreman for a man to run the elevator on the particular or any occasion. An employee by the name of Molitor, at plaintiff's request, was then operating the elevator. There was conflicting evidence as to whether a foreman by the name of Klietz, who had nothing to do with the mat-

ter, suggested that plaintiff take Molitor for his assistant. Plaintiff claimed he directed Molitor not to operate the car below the second floor, but the latter, as he testified, was not made to so understand, or that plaintiff intended to go into the pit. He supposed plaintiff was going to sweep around the elevator and had no idea that he was in the pit when the car was caused to descend. There was always a man specially hired to run the elevator. No one had any business to interfere with it except under special permission or orders to do so.

The jury found that plaintiff was not authorized by the superintendent to place another in temporary charge of the elevator without consulting the particular foreman. Plaintiff supposed and, as a man of ordinary care had reason to suppose, that he might do as he did as to turning the operation of the elevator, temporarily, over to Molitor. Molitor was acting within the scope of his employment in operating the elevator. He failed to exercise ordinary care in respect to the matter which was the proximate cause of the accident. Plaintiff was free from any want of ordinary care proximately causing his injury. He was damaged to the extent of $3,000. Judgment was rendered in his favor for such sum with costs.

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *I. A. Fish,* of counsel, and oral argument by *Mr. Fish.*

For the respondent there was a brief by *William F. Schanen,* attorney, and *James D. Shaw,* of counsel, and oral argument by *Mr. Shaw.*

MARSHALL, J. As indicated in the statement, respondent had no authority to place a man in temporary charge of the elevator without consulting Foreman Boenning; but the jury decided that he supposed, and had reasonable ground to suppose, he had authority to so place Molitor. If there is any

basis whatever for that finding it is in the evidence to the effect that respondent had been accustomed to so place Molitor and had not been prohibited from doing so. Molitor, by the uncontroverted evidence, was under a foreman by the name of Klietz who had nothing to do with running the elevator or with directing respondent or any one else in respect to it. All power in that regard was vested in Foreman Boenning and respondent knew it. There is no need to recite the evidence in respect thereto. Suffice it to say that it is plain and conclusive.

Molitor was under Klietz, not Boenning. Klietz not only did not authorize Molitor, directly or indirectly, to run the elevator, but, on the contrary, expressly prohibited him from doing so. Molitor knew that he was acting outside the scope of his authority and in defiance of orders. His evidence and that of Klietz leave no doubt about it. Respondent testified that he asked Klietz for a man to operate the elevator temporarily, was directed to take one Lutz, and did not think that he had any authority to assign Molitor. We are unable to find any evidence, direct or circumstantial, contrary to this. So the findings as to respondent having efficient reason for supposing he had authority to engage Molitor to take temporary charge of the elevator and that Molitor, in complying, acted within the scope of his authority, are wholly unsupported.

There is evidence, direct and circumstantial, that respondent was authorized to leave the elevator in temporary charge of another, properly delegated by superior authority or engaged by him; but there does not seem to be any evidence indicating authority to have such assistant while he was engaged in cleaning out the elevator pit. He testified that he asked Klietz for such an assistant. He also testified that he spoke to the superintendent about having some one run the elevator on occasions, but did not testify that such occasions included when he might be in the pit. When asked so as to

call for a particular statement he said, as before indicated, that he asked Klietz if he could have a man; that he was directed to take Lutz and did not think he was given power to take Molitor. As to his talk with the superintendent he said: "I asked for a man to run the elevator while I was cleaning the place." He "said I should get one. I should have a man to take charge of the elevator." "I should get some one to run it for me when I am not there."

If any such conversation as that indicated took place it must have related to running the elevator while respondent was cleaning up around it, which evidently was a frequent occurrence, while cleaning the pit was required only on Wednesdays and Saturdays, and to temporary absences which, according to the evidence, were liable to occur from various causes. There are conclusive reasons why it did not relate to the pit work and that respondent must have known it did not. In the first place, it was almost, if not quite, fool-hardy conduct to go into the elevator pit to work while the elevator car was in service, even if the person in charge was admonished not to run to the lower floor. In the second place, the evidence is conclusive that respondent was expressly instructed not to go into the pit without first securing the car so it could not be moved. When the contract was made with him he was told "not to go under" the elevator "when it was running, when it was moving at any time, and if he did go under there that he should tie the rope." "To tie the rope and to be sure not to go under there without the rope being tied." That stands undisputed in the record. Moreover, it is corroborated by respondent. He testified: "The foreman told me that before I went under the elevator I should tie the rope." "The foreman did, but Moeser" (the superintendent) "had told me before. I asked him about it after that and he said that I should get some one to run it for me when I am not there. Moeser told me that when I was there about a week. The foreman told me a couple of days after. I just got through cleaning up. Moeser told

me that.    It was after Moeser told me.    I did not ask the foreman how to tie the ropes, he did not show me and it wasn't up to me to ask him."

The idea of not going under the elevator without the rope being first tied so it could not be operated in the meantime, and that of having some one to run the elevator "when I am not there," if both are referable to the time of cleaning the pit, are such obvious contradictions that it must have been understood that the elevator car was to be out of service while the pit was being cleaned, and that, if respondent needed to be absent from work entirely, he might get some one in his place.    It must be understood that the elevator was not open to be run by any one; that no one had any authority to operate it but respondent or some one specially designated therefor.

So respondent went into the place of danger contrary to express orders and did it consciously.    His only excuse was that he did not know how to tie the rope and that it was none of his business to find out.    If that were conceded, it does not do away with the fact that he was prohibited, and he knew he was prohibited, from going into the pit while the car was in service.    If he did not know how to put the car out of service he should have informed himself and acted accordingly, or kept out of the pit.

Respondent's conception of duty to himself and to his employer, that it was not his business to make any inquiry in respect to doing what he was so carefully admonished to do for his own protection, in case of his needing instruction, is all wrong.    He had been more or less familiar with the elevator for years.    The evidence is to the effect that there was a brake rope which hung loose in the shaft by which the appliance was operated; that by pulling the rope it set the brake and stopped the car and that by so pulling and fastening the rope the car would be completely out of commission until the rope should be released.    It is hard to believe that such a simple contrivance could have been unfamiliar to a person of

respondent's age and experience who had been familiar with the elevator in a general way for years, and had been in charge of it for several weeks. The foreman and superintendent, evidently, supposed, and had a right to suppose, that he understood his instructions and how to execute them, certainly, if he did not he would make his want of knowledge known instead of wilfully violating his orders and depending upon his own way of substituting protection by selecting a man to keep the elevator in service while he cleaned the pit and instructed him not to run below the second floor. In a most inexcusable and negligent way respondent violated his instructions and took the chances. So we must hold that the findings as to his being excusable for placing Molitor in charge of the elevator while the pit was being cleaned and as to his being free from contributory negligence proximately contributing to his injury, are clearly contrary to the evidence. Appellant was not involved in the matter in any way whatever. Respondent's working place and the appliances connected therewith, as he was ordered to use them, were safe. He went contrary to his instruction, wholly upon his own responsibility and without the knowledge of respondent. He was not required or permitted to do as he did. The court below erred in not deciding accordingly.

We do not overlook the testimony of respondent as to thinking his foreman knew Molitor, on occasions, ran the elevator. His mere supposition cannot stand up against the positive testimony to the contrary and that it was his duty to run the elevator when there and that when he was not it either remained out of service or some one was put in his place.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded with instructions to dismiss the same with costs.

SIEBECKER, KERWIN, and TIMLIN, JJ., dissent.